Bigger, J.
„ The action is brought by the plaintiffs to obtain an accounting of a trust placed in the hands of J. O. B. Renick, and by him transferred with the property to his wife, Rebecca Renick. In substance, the facts stated in the petition are as follows:
*305 William Renick died in 1845, testate, and devised eight hundred and twenty-nine acres of land located in Pickaway county to the children of his son, J. O. B. Renick, and appointed his son, J. O. B. Renick, trustee to hold said lands for the benefit of his children, and with the discretionary power of selling said real estate, and directing him in case of sale to reinvest the proceeds in land.
During the years 1855, 1857 and 1858 the said J. O. B. Renick exercised the power conferred upon him by the will, and sold all the lands conveyed to him in trust, and mingled the proceeds with his own assets.
During the years 1856 and 1859 he invested the major portion of the proceeds in real estate, taking the title to the same in his own name. He afterwards sold a portion of these lands and converted the proceeds to his own use. He also appropriated the rents and profits to his own use.
J. O. B. Renick died in 1888, testate, and devised the lands purchased by him, with the proceeds of the trust estate, to his wife, Rebecca Renick.
J. O. B. Renick had five children, one having died before the grandfather and one being born after the grandfather’s death. Three of the four children living at the time of the death of William Renick died prior to 1856, all dying in infancy, intestate, unmarried and without issue. The fourth son, Daniel McNeil Renick, lived until 1862 and died at the age of 22 years, intestate, unmarried and without issue.
The plaintiffs in this case’are the children or the legal representatives of the deceased children of William Reniclc. This action was brought in the year 1900. The plaintiffs aver that they did not know and had no means of knowing until about May, 1899, that they had any right, title, interest or estate in the land bought by J. O. B. Reniek with the proceeds received from the sale of the lands in Pickaway county, and were in part prevented from knowing it by the action of J. O. R Renick taking title in hig own name to the real estate.
Under this state Of facts what iff any interest' have these children of William Bepick or their legal representatives in the trust estate!
*306 Very elaborate briefs have been filed upon both sides which raise and discuss a number of questions. I will not undertake to state all these various contentions at length, as in the view I take of the case it may be determined by the decision of one of these questions.
It is clear that the estate which was vested in William Renick in the Pickaway county lands came by devise to these children of J. O. B. Renick, J. O. B. Renick taking the legal title with a power of sale to be exercised at his discretion, and the equitable estate vested in the children.
Equitable estates descend as legal estates under the statute of
Upon the death of the brothers and sisters of Daniel McNeil descent and distribution. Bolten v. Bank, 50 O. S., p. 290. Renick, intestate, unmarried and without issue, their interest in the estate descended to Daniel McNeil Renick, whether the estate be considered ancestral or non-ancestral property. Upon the death of these children in succession the survivors would inherit from the deceased brother or sister under either Section 4158 or 4159. The entire equitable estate thus by inheritance finally centered in Daniel McNeil Renick. Had the Pick-away county lands which came to these children directly by devise from their grandfather remained in the hands of the trustee until the death of Daniel McNeil Renick, he would have been vested with the entire equitable estate, three-fourths of which came to him by descent from his brothers and sisters and one-fourth coming to him immediately by devise.from his grandfather. In that state of the case, as to this one-fourth interest which would have been ancestral real estate, J. O. B. Renick and his brothers and sisters and their legal representatives would have taken by descent. The other thr§e-fourths interest in the estate which came to him by descent from his brothers and sisters would have descended to his father and his next of kin of the blood of the ancestor from whom the estate came.
B.ut, during the lifetime of Daniel McNeil Renick the entirp estate in these Pickaway county lands was sold by the trustee, J. O. R. Renick, and the proceeds for the greater part invested in other real estate- This then raises the question whether or. *307 not any part of the estate which was vested in Daniel McNeil Renick at the time of his death was ancestral property which would descend to these plaintiffs.
In my opinion this question must be answered in the negative, and that the estate vested in Daniel McNeil Renick was hone of its ancestral property. In determining questions of descent of real property, regard is had only to the legal title, and that title must have come immediately from the ancestor.
In the ease of Brower v. Hunt, 18 O. S., p. 311, the title to real estate which must have come to an intestate by devise or deed of gift from an ancestor to constitute ancestral property is the title under which the intestate immediately held.
■It is held in that case that “where specific tracts of land have been allotted to co-devisees in pursuance of directions in the will of the ancestor, and afterwards one conveyed his tract to a co-devisee for a moneyed consideration as expressed in the deed, but in fact for a like conveyance by the latter of the tract he had received in the partition — held, that the title of neither was derived directly by devise from the ancestor, and that for the purpose of descent each was to be regarded as a purchaser. ’ ’
In Kihlken v. Kihlken, 59 O. S., 106, it was held that—
“Where an owner of ancestral lands conveys them to another on a written agreement that he will upon request reconvey them, the ancestral character of the land is thereby destroyed. And if a request to reconvey is made, but the grantor dies before it is executed, without issue but leaving a widow, brothers and sisters, a conveyance to the,widow is a proper execution of the trust, and the brothers and sisters of the deceased grantor have as heirs no legal or equitable title to the land.”
Judge Minshall, in discussing the question; in the opinion again .emphasizes the fact that the title must have come immediately from the ancestor or it will not be considered ancestral property.
Bouvier defines “immediate” as follows: “That which is produced directly by the-act to which it is ascribed without the intervention of any distinct immediate cause.”
*308 Webster defines “immediate” as meaning among other things “acting with nothing interposed or between, or without the intervention of another object as a cause.”
Wooster defines “immediate” as “having nothing intervening either as to place, time or action.”
The word “immediate” has two meanings, one indicating the relations to cause and effect, and the other, the absence of time intervening between two events; it is when used with relation to cause and effect that it means without the intervention of an-relation of cause and effect, and the other, the absence of time intervening between two events; and it is when used with relation to cause and effect that it means, without the intervention of an other cause, means, medium or condition — that is, producing its effect by direct agency as defined by Wooster.
Now, it would seem clear that the title to the lands purchased with the proceeds of the sale of the Pickaway county lands, which was vested in Daniel McNeil Renick at the time of his-death, could not have come immediately from the will of William Renick. Upon the death of his grandfather the equitable title to the lands vested in him, and this title thus vested in him was divested when the lands were sold by J. O. B. Renick under the power conferred upon him by the will. The legal title to these lands which was held by J. O. B. Renick could not have come immediately from William Renick because William Renick never had title either legal or equitable to these lands, and the title could not have been east upon him to these lands without the intervention of another .object as a cause. The title, both legal and equitable, came by purchase and could not have come directly and immediately by the will of William Renick.
I am of the opinion counsel for the plaintiffs is correct in his claim that the doctrine of equitable conversion applies here, and that in whatever form this property existed in the hands of J. O. B. Renick, it was to be considered as real.estate. But counsel claims more than is to be found in the.doctrine when he ..argues that under that doctrine it is to be considered as ancestral real estate. The quality of th'e estate, as ancestral or *309 non-aneestral, is no part of that doctrine. So that as to the entire estate, in whatever form it existed after the sale of the Pickaway county lands, it is in my opinion to be considered as real estate. But manifestly it was not the real estate which was devised by the will, for it came as a result of the sale of the real estate which came by the devise, and was other and different real estate from that which came by devise and was in its entirety real estate which came by purchase. I conclude therefore that the interest in this property which came to Daniel McNeil Reniek by devise from his grandfather, was by the sale of the Pickaway county lands converted into non-ancestral real estate, and that the title vested in him at his death was a title by purchase.
The entire fee was devised by the will of William Reniek. The legal title with a power to sell was vested in the trustee and the equitable estate in cestid que trust.
It will be admitted that if the entire estate had been devised so as to vest both the legal and equitable estate in a single individual, that a sale of the ancestral real estate by him and the investment of the proceeds in other real estate would have vested the estate in him by purchase and have destroyed the ancestral character of the property. How can it be different in principle and legal effect where the entire fee is devised, but separately, the legal estate to one and the equitable estate to another, with power in the trustee in his discretion to sell the ancestral real estate. In both cases there is an absolute devise of the fee. In both cases there is a grant of power to sell at discretion, and in either case when the sale is effected the ancestral real estate is gone and another estate by purchase takes its place.
I conclude therefore that in so far as the estate came to Daniel McNeil Reniek by descent from his brothers and sisters, it would descend upon his death to his father as next of kin of the blood of the ancestors from whom the estate came under Section 4158, and that in so far as the estate came to him direct by devise from his grandfather, that by the sale of the ancestral real estate it was converted into non-ancestral real estate and would do *310 seend also to his father under Section 4159, and the legal estate being then vested in.the father the entire estate both legal and equitable was merged in him. As to the suggestion that, the trustee can not be permitted to thus change the. course of descent, the answer is that he was given that power by the will, and these plaintiffs never having been vested with any estate in this property have no equities to assert. The Supreme Court of Indiana, in the case of Armington v. Armington, 28 Ind., p. 74, decided that “the doctrine that equity will follow land or even money into whatever shape it may assume in the hands of the holder for the purpose of upholding an equity, does not apply to the canons of descent. ’ ’
Pugh & Pugh, for plaintiffs.
Henderson, Livesay & Burr, for defendants.
Judge Minshall says in the case of Kihlken v. Kihlken, supra, that there is no room for the question of good faith or fraud on •the part of the. owner of ancestral lands in changing their character. He has during life the power to dispose of .them- as. .he pleases. " J. O.-. B. Renick had this power given .him,< by the will, •and when’. "William Renick conferred it upon him he must'have .'contemplated that this would place it within his power to change the line of descent. ■ • . ■
" I conclude therefore that these plaintiffs have no rights which they can.assert, and that the petition does-not state a cause of action in their favor.
The demurrer is therefore sustained.